# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY OWENS,                     :        Civ. Action No. 05-3132 (NLH)
                                   :
       Plaintiff,              :
                                   :
    v.                         :        **OPINION**
                                   :
CITY OF ATLANTIC CITY,             :
ATLANTIC CITY POLICE DEPT.,        :
CHARLES MILLER, ARTHUR C.          :
SNELLBAKER, ROBERT FLIPPING,       :
et al.,                            :
                                   :
       Defendants.             :

**APPEARANCES:**

Thomas F. Shebell, III, Esquire
H. Tiffany Weiner, Esquire
Steven R. Cocchi, Esquire
Shebell & Shebell, LLC
1398 Highway 35 South
Ocean Township, NJ 07712

     *Attorneys for Plaintiff*

A. Michael Barker, Esquire
Sharlenn Pratt, Esquire
Barker, Scott & Gelfand, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

     *Attorney for Defendants Charles Miller and Robert Flipping*

John Charles Hegarty, Esquire
Solicitors Office for Atlantic City
City Hall
1301 Bacharach Boulevard
Atlantic City, NJ 08401-3603

     *Attorney for Defendants City of Atlantic City, Atlantic City Police Department, and Arthur Snellbaker*

**HILLMAN**, District Judge

This matter has come before the Court on defendants' motions for summary judgment on plaintiff's claims that defendants violated various federal and state constitutional rights when defendant Charles Miller used excessive force in effecting his arrest.  Defendants have also moved for summary judgment on plaintiff's state law assault and battery claim, as well as plaintiff's claims of failure to train and supervise.  For the reasons expressed below, defendants' motions will be granted, except for plaintiff's claims against Miller for excessive force and assault and battery.

I.   **SUMMARY OF THE FACTS**

This case arises out of the shooting of plaintiff Anthony Owens by defendant Atlantic City Police Officer Charles Miller on July 19, 2003.  On that day, plaintiff and his friend, Clifton Dees, had been gambling and drinking at several casinos on the Atlantic City, New Jersey boardwalk.  At approximately 4:30pm, five minutes after plaintiff and Dees had left the Caesars Casino, plaintiff assaulted and attempted to rob a man who was walking on the boardwalk with his friends.[1]  Without getting any money from the man, plaintiff and Dees ran down a ramp and off

---

[1]Because plaintiff pleaded guilty to robbery, and the crime of robbery includes the infliction of bodily injury onto another person, these facts are undisputed.  See N.J.S.A. 2C:15-1.

the boardwalk.

At the same time, Officer Miller, who was dressed in a bike patrol uniform, had been on route to a call regarding a lost child on the boardwalk. Bystanders to the robbery flagged down Miller and informed him that a man had been assaulted and robbed by two black males, who had fled on foot down the ramp leading to Indiana Avenue. Miller radioed the station to report the robbery and that he had identified the suspects as two black males, one wearing a white t-shirt and jean shorts (Dees) and the other wearing a white t-shirt and jeans (plaintiff). Miller bicycled north on Indiana Avenue in the direction of the loading dock and valet area of Bally's Hotel and Casino. Miller spotted plaintiff and Dees running into the loading dock area, approached them from behind, alighted from his bicycle and drew his gun.

At this point, the parties' version of events diverge. Plaintiff claims that Miller shot him in the back while he was trying to flee. Miller relates that after he identified himself as a police officer, plaintiff turned to face Miller and advanced in his direction. Miller contends that plaintiff did not heed Miller's warning to stop, and he brought his gun close to his body and attempted to kick plaintiff and push him away with his foot. Miller then contends that plaintiff grabbed Miller's leg, threw him onto the ground, and attempted to grab his gun. While plaintiff was trying to take Miller's gun, Miller claims that he

3

fired four shots in rapid succession, with one bullet hitting plaintiff in the back.  Miller relates that plaintiff then attempted to run away, but a short distance later fell, got up again, and then got down onto the ground in a prone position. Miller claims that he got to his feet, radioed dispatch that shots had been fired and that plaintiff had attempted to take his gun.  Miller continued to point his gun at plaintiff until additional police units arrived.

A Bally's security camera captured the incident in the loading dock, and both parties agree that this incident lasted less than three seconds.  Plaintiff claims that as a result of being shot in the back, he suffered "severe, permanent physical injuries, including but not limited to, the following: fractures of the posterior sixth and seventh ribs; a fracture[] of the sixth thoracic vertebrae; bilateral punctured lungs; significant lung damage, resulting in the need for a left-sided lobectomy; permanent diminished lung capacity . . . ."  (Compl. ¶ 17.)

Plaintiff was indicted for robbery, conspiracy to commit robbery, and aggravated assault on a police officer.  He pleaded guilty to robbery in violation of N.J.S.A. 2C:15-1 and resisting arrest by physical force or violence in violation of N.J.S.A. 2C:29-2(a)(3)(a).  Plaintiff was sentenced to seven years for robbery and four years for resisting arrest, with the sentences to run concurrently.  The shooting was investigated by the

4

Atlantic County Prosecutor's Office and presented to the grand jury, who determined that the shooting of Owens was justified. The prosecutor's office also cleared Miller of any wrongdoing.

## II. DISCUSSION

Plaintiff has asserted numerous claims against the defendants. Primarily, plaintiff claims that Miller used excessive force in effecting his arrest in violation of the Fourth Amendment to the United States Constitution and the New Jersey Constitution, and that defendants Robert Flipping, Director of Public Safety for Atlantic City, Arthur Snellbaker, Atlantic City Police Chief, the City of Atlantic City, and the Atlantic City Police Department violated his rights under the Fourth Amendment and state constitution for their failure to properly train and supervise Miller, as well as their fostering a policy and practice of excessive force. Plaintiff has also asserted claims for violations of state law alleging assault and battery against Miller and negligent supervision against all defendants.[2] Defendants have moved for summary judgment on all

---

[2]In his introductory paragraph in his complaint, plaintiff claims that defendants violated his rights under the Eighth Amendment (proscription against cruel and unusual punishment) and the Fifth Amendment (federal due process). Plaintiff does not include a separate count for these alleged violations, and he does not otherwise state claims for violations of these rights. Defendants have moved for summary judgment on these claims, and plaintiff has not opposed defendants' motion with regard to these claims.

As argued by defendants, these claims are invalid. See

Rodriguez v. City of Passaic, 730 F. Supp. 1314, 1319 (D.N.J. 1990) (quoting City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244 (1983)) (dismissing plaintiff's Eighth Amendment claim for events arising prior to his conviction because "the Eighth Amendment proscription of cruel and unusual punishment is implicated "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law"); Nguyen v. United States Catholic Conference, 719 F.2d 52, 54 (3d Cir.1983) (holding that the Fifth Amendment circumscribes only federal government actors).  Thus, defendants are entitled to summary judgment on plaintiff's Eighth and Fifth Amendment claims.

Plaintiff has also asserted a separate count for the violation of 42 U.S.C. § 1983.  As a primary matter, this count is improper because § 1983 does not itself confer any substantive rights; it merely serves as a vehicle to enforce rights granted through the Constitution or through federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  Within this count, plaintiff has asserted claims for violations of his substantive and procedural due process rights and the equal protection clause of the Fourteenth Amendment.  Again, plaintiff does not elaborate on how defendants violated these rights.  Defendants have moved for summary judgment on these claims, and plaintiff has not opposed their motion.

Defendants are entitled to summary judgment because plaintiff's substantive due process claim is invalid, and he has failed to allege or prove his procedural due process and equal protection claims.  See Chavez v. Martinez, 538 U.S. 760, 773 n.5 (2003) (stating that the Court had previously "foreclosed the use of substantive due process analysis in claims involving the use of excessive force in effecting an arrest" and held that such claims are governed solely by the Fourth Amendment's prohibitions against "unreasonable" seizures, because the Fourth Amendment provides the explicit source of constitutional protection against such conduct); Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1290 (3d Cir. 1993) (instructing that to prevail on a procedural due process claim, a plaintiff must demonstrate that he has: (1) "been deprived of a property interest" because (2) "of either arbitrary and capricious governmental action or a denial of fair legal process"); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (instructing that to maintain a claim

of plaintiff's claims.

A.    **Jurisdiction**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as pursuant to the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

B.    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the

_____

under the equal protection clause, a plaintiff must claim that
absent a rational basis for doing otherwise, he was treated
differently than similarly situated persons).

7

outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

        C.  **Analysis**

                1.  ***Defendants Miller and Flipping's Motion for Summary Judgment***

Miller argues that he is entitled to summary judgment on plaintiff's excessive force claim because it is barred under Heck v. Humphrey, 512 U.S. 477 (1994) and/or under the principles of

8

estoppel.  Miller also argues that even if his claims are not estopped or barred by Heck, he is entitled to qualified immunity. Additionally, Miller argues that he is entitled to summary judgment on plaintiff's claims under the state constitution for the same reasons as his federal excessive force claim.

Flipping argues that he is entitled to summary judgment on plaintiff's claims arising under § 1983 because plaintiff has failed to articulate with particularity how Flipping violated his rights.  Both defendants also argue that they are entitled to summary judgment on plaintiff's state law claims because they are entitled to immunity under the New Jersey Tort Claims Act.

### a.   Whether plaintiff's excessive force claim is barred by Heck

Miller argues that plaintiff's guilty pleas to robbery and resisting arrest preclude his excessive force claim pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).  Under Heck, if a favorable judgment on a § 1983 damages claim would "necessarily imply the invalidity" of the plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. Heck, 512 U.S. at 486-87.

Miller argues that a judgment in favor of plaintiff on his excessive force claim would invalidate his guilty pleas for robbery and resisting arrest.  Specifically, Miller argues that because the offense of assault is a lesser included offense of

9

the crime of robbery, a judgment in plaintiff's favor on his excessive force claim would invalidate his robbery conviction. Miller also argues that resisting arrest by physical force or violence is predicated on plaintiff's assault of Miller, a judgment in plaintiff's favor on his excessive force claim would invalidate his conviction for resisting arrest.  Miller's arguments are unpersuasive, because he extends the <u>Heck</u> doctrine too far.

The threshold inquiry in an excessive force case is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989); <u>Brower v. County of Inyo</u>, 489 U.S. 593, 599 (1989).  Thus, in order to determine whether plaintiff's convictions would be barred by <u>Heck</u>, it must be determined whether a finding that Miller did not act objectively reasonably would invalidate those convictions.  Here, such a finding would not invalidate plaintiff's convictions for robbery and resisting arrest.

With regard to his plea to robbery, a person is guilty of robbery if, in the course of committing a theft, he:

> (1) Inflicts bodily injury or uses force upon another; or
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
> (3) Commits or threatens immediately to commit any crime of the first or second degree.

10

> An act shall be deemed to be included in the phrase "in
> the course of committing a theft" if it occurs in an
> attempt to commit theft or in immediate flight after
> the attempt or commission.

N.J.S.A. 2C:15-1.  Plaintiff's admission that in the course of
committing a theft he purposefully inflicted bodily onto the
victim has nothing to do with plaintiff's claims that after he
committed the robbery, Miller used excessive force in effecting
his arrest.  In other words, even though the crime plaintiff
committed may inform Miller's actions in effecting his arrest--a
more serious crime may warrant more force--a finding that Miller
was objectively unreasonable in the use of force he used in
effecting plaintiff's arrest would not negate plaintiff's
admission that he assaulted the robbery victim.

Evidently recognizing that plaintiff's robbery conviction
would not be invalided by a finding in plaintiff's favor on his
excessive force claim, Miller argues that the Third Circuit has
held that assault is a lesser included offense in the offense of
robbery, and that by pleading guilty to robbery, plaintiff was
also guilty of assaulting Miller.  This argument is not supported
in the law.

Miller cites to Rabess v. Government of Virgin Islands, 868
F. Supp. 777, 781 (D.V.I. 1994) to support his proposition that
assault is a lesser included offense of the crime of robbery.
The Rabess court did make such a statement, citing to the Third

11

Circuit case <u>Government of the Virgin Islands v. Joseph</u>, 685 F.2d 857, 865-66 (3d Cir. 1982).  The <u>Rabess</u> court further stated, however, that the Third Circuit had held that assault is a lesser included offense to the crime of robbery "when all of the elements of both offenses are committed against the **same individual**."  <u>Rabess</u>, 868 F. Supp. at 781 (citing <u>Joseph</u>, 685 F.2d at 866) (emphasis in original).  Thus, although it is true that by being guilty of robbery, plaintiff may have also been guilty of assault, that guilt would be for assaulting the robbery victim, not Miller.  A finding that Miller acted unreasonably in his use of force against plaintiff would not invalidate a conviction for the lesser included offense of assault on the robbery victim.[3]

Similarly, a finding in favor of plaintiff on his excessive force claim would not invalidate his conviction for resisting arrest.  Miller argues that the crime of resisting arrest by physical force or violence would be invalidated by a judgment in his favor.  To support his argument, Miller again relies on the proposition that plaintiff's robbery conviction causes plaintiff

---

[3]The <u>Rabess</u> court addressed the issue in the context of whether multiple sentences for convictions of third degree robbery and simple assault against the same victim in a single prosecution violates the appellant's double jeopardy rights. <u>Rabess</u>, 868 F. Supp. at 781.  The Court takes no position on whether plaintiff's guilty plea for robbery also causes him to be guilty of assault, and only addresses the issue in response to Miller's arguments.

to be guilty of assaulting Miller.  Because he is guilty of assaulting Miller, and self-defense is a defense to assault, a judgment in plaintiff's favor would necessarily imply the invalidity of plaintiff's resisting arrest conviction because he did not argue self-defense.[4]

The problem with this argument is that plaintiff's robbery conviction did not make him guilty of assaulting Miller, and plaintiff was not charged with and did not plead guilty to assaulting Miller.  Thus, because plaintiff is not guilty of assaulting Miller, he could not have pleaded self-defense.  Consequently, Miller's self-defense argument is unavailing.

To further support that a judgment in plaintiff's favor on his excessive force claim would not invalidate his conviction for resisting arrest by physical force or violence, the Third Circuit has held that such a conviction would not be invalidated.  For example, in Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997), the plaintiff was convicted in state court of resisting arrest in

---

[4]Courts, including this Court, have found that a plaintiff who has pleaded guilty to assaulting an officer and who has not availed himself of the defense of self-defense cannot sustain an excessive force claim.  Allowing such a plaintiff to maintain an excessive force claim would undermine the assault conviction because it would demonstrate that the force applied to the suspect was not excessive and unnecessary.  See Garrison v. Porch, Civ. Action No. 04-1124 (NLH) (March 9, 2007); Jennings v. Fetterman, 197 Fed. Appx. 162, 163 (3d Cir. 2006).  It appears that Miller is relying on that holding to support his argument.  As stated above, Miller's argument is misplaced, because plaintiff was not convicted of assaulting him.

violation of a Pennsylvania statute, "which provides that a person is guilty of resisting arrest if 'with the intent of preventing a public servant from effecting a lawful arrest [he] creates a substantial risk of bodily injury to the public servant . . . or employs means justifying or requiring *substantial force* to overcome the resistance.'"   Nelson, 109 F.3d at 145 (emphasis in original).   Following his conviction, the plaintiff filed suit pursuant to § 1983 against the arresting officer, claiming that the officer used excessive force in effecting his arrest.   Id. at 144.   The district court dismissed the plaintiff's excessive force claim, finding that Heck barred his claim because a judgment in his favor would invalidate his conviction for resisting arrest.   Id. at 144-45.   On appeal, the Third Circuit reversed, holding that a finding that the officer used excessive "substantial force" would not imply that the arrest was unlawful. Id. at 145.   The court explained,

> Our difficulty with the district court's result is that the fact that [the officer] was justified in using 'substantial force' to arrest [the plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable.   In short, there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable.

Id.

The same analysis applies here.   Plaintiff pleaded guilty to

14

N.J.S.A. 2C:29-2(a)(3)(a), which provides that a person is guilty of resisting arrest if he "purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest" by using or threatening "to use physical force or violence against the law enforcement officer or another."  By his guilty plea, plaintiff has admitted that he used physical force or violence against Miller to purposefully prevent his arrest.  Even with that admission, however, it could still be found that Miller used even more force--i.e., excessive and unreasonable force--in effecting plaintiff's arrest than plaintiff used in resisting arrest.  Thus, plaintiff's excessive force claim is not barred by Heck.

> **b.   Whether plaintiff's excessive force claim is barred by the doctrine of estoppel**

Miller also argues that plaintiff's excessive force claim is barred by the doctrines of collateral and judicial estoppel. Specifically, Miller argues that plaintiff is estopped from claiming that Miller used excessive force because "he admitted to the state criminal court, without proof of self-defense, that he resisted arrest by physical force or violence and committed a robbery without proof of self-defense."  (Def. Br. at 17.) Miller relies on the presumption, discounted above, that plaintiff admitted to assaulting Miller, and that his excessive force claim is an inconsistent position with his guilty pleas for

15

robbery and resisting arrest.

Collateral and judicial estoppel are legal doctrines that prevent a litigant from taking a position in a current case that is clearly inconsistent with a position taken in a prior case. See, e.g., Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006). Even though defendants in a § 1983 action "can assert collateral estoppel as a defense where the plaintiff is attempting to raise issues he previously raised in a criminal proceeding," Albert v. Schwartz, 173 Fed. Appx. 106, 108 (3d Cir. 2006) (citing Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986)), Miller's estoppel argument fails for the same reason as his argument based on Heck--plaintiff's guilty pleas to robbery and resisting arrest did not resolve the issue of whether Miller used excessive force in effecting plaintiff's arrest. Thus, plaintiff is not estopped from pursuing his excessive force claim.

### c.   Whether Miller is entitled to qualified immunity

Miller next argues that even if the Heck or estoppel doctrines do not bar plaintiff's excessive force claim, he is entitled to qualified immunity, and, consequently, summary judgment. The qualified immunity analysis provides the basis to determine whether a claim for a constitutional violation by a law

16

enforcement officer is viable.[5]  The standard promulgated by the

Third Circuit is as follows:

> Qualified immunity protects law enforcement
> officers from being tried for actions taken in the
> course of their duties.  If the immunity applies,
> it entitles the officer to be free of the 'burdens
> of litigation.' But the immunity is forfeited if
> an officer's conduct violates 'clearly established
> statutory or constitutional rights of which a
> reasonable person would have known.' To determine
> ... whether the officers have lost their immunity,
> we must engage in a two step analysis. First, we
> must decide 'whether a constitutional right would
> have been violated on the facts alleged . . . .' .
> . . Second, if we believe that a constitutional
> violation did occur, we must consider whether the
> right was "clearly established."  The question is
> 'whether it would be clear to a reasonable officer
> that his conduct was unlawful in the situation he
> confronted.' This is an objective inquiry, to be
> decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004) (citations

omitted).  Thus, in order to determine whether plaintiff's claims

---

[5]Because the analysis of claims under state constitutional
law is similar to the analysis under the Fourth Amendment, no
separate analysis will be undertaken for plaintiff's claims
arising under the New Jersey Constitution.  See Hedges v. Musco,
204 F.3d 109, 121 (3d Cir. 2000) (granting defendants' motion for
summary judgment on plaintiffs' claims under Article I, paragraph
7 of the New Jersey Constitution, because it was already
established that there was no federal constitutional violation)
(citing Desilets v. Clearview Regional Bd. of Educ., 627 A.2d
667, 673 (N.J. Super. Ct. App. Div. 1993) ("We are not persuaded
that the New Jersey Constitution provides greater protection
under the circumstances of this case than its federal
counterpart. We note that in its *T.L.O.* opinion the New Jersey
Supreme Court analyzed the search and seizure issue under the
Fourth Amendment to the United States Constitution, and did not
suggest that New Jersey's organic law imposed more stringent
standards.")).

against Miller are viable, it must first be determined whether Miller violated plaintiff's constitutional rights.  If so, it must then be determined whether those rights were clearly established.

As briefly noted above, to determine whether a police officer used excessive force case it must be determined whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Graham v. Connor, 490 U.S. 386, 397 (1989); Brower v. County of Inyo, 489 U.S. 593, 599 (1989).  The proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  The Third Circuit has added other relevant factors, including, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Miller argues that the shooting of plaintiff was objectively reasonable under the circumstances of this case, and, thus, he did not violate plaintiff's Fourth Amendment rights.  Plaintiff, however, has presented numerous issues of disputed fact which preclude the entry of summary judgment in Miller's favor.

To dispute Miller's version of events and to support his version, plaintiff relies on the following evidence:

1.   ***Bally's Surveillance Video***

Plaintiff argues that the surveillance video that captured the incident supports his claim that even though he knocked down Miller as he was trying to get past him to prevent being arrested, he did not attempt to steal Miller's gun, and he was shot in the back while running away.  In contrast, Miller contends that the video supports his version of events, where Miller drew his gun, plaintiff advanced toward Miller, Miller tried to push him away with his foot, plaintiff grabbed Miller's leg, threw him to the ground, and attempted to grab his gun. Miller contends that the video also shows that while plaintiff was trying to take his gun, he fired four shots in rapid succession, with one bullet hitting plaintiff in the back. Miller contends that it was not until plaintiff was shot that he began to run away.

The Court's review of the video shows that a disputed issue of fact remains as to the substance of the encounter between

plaintiff and Miller.[6]  A comparison of the video with
plaintiff's version of events, which on a summary judgment motion
is to be believed and all justifiable inferences are to be drawn
in his favor, cannot support Miller's claim that no reasonable
juror would credit plaintiff's account.  See Scott v. Harris, 127
S. Ct. 1769, 1775 (2007) ("In qualified immunity cases, [the
court usually adopts] . . . the plaintiff's version of the
facts.").  Because plaintiff has demonstrated that his version of
events could be supported by the video, it is for a jury to
decide which interpretation to believe, and whether Miller's
actions were objectively reasonable.  Consequently, on this piece
of evidence alone, summary judgment must be denied as to
plaintiff's claim that Miller violated his Fourth Amendment
rights when Miller used excessive force in effecting his arrest.

   2.   *Eye witness account*

   In further support of his claims, plaintiff presents the
statement of Dennis Beasley, who was an eye witness to the
incident.  (Pl. Ex. B.)  Beasley states that he was walking on
the sidewalk of the loading deck area when he saw two males--
later identified as plaintiff and Dees--running down the street
and into the loading dock area by a parked truck.  Beasley

---

[6]The parties agree that a videotape which has not been
"doctored or altered in any way" should be considered in the
qualified immunity analysis.  Scott v. Harris, 127 S. Ct. 1769,
1775 (2007).

continued walking until he saw a police officer--later identified as Miller--ride up on his bicycle at a high rate of speed yelling for the two people to stop.  Beasley relates that Miller went inside towards the loading dock and saw him "kick towards where those fellows were standing."  "[T]hree seconds later I saw the one fellow start running out of the loading dock area" and Miller came out and "I don't exactly know if he had his gun drawn then or not but he yelled t[w]o or three or four times at [plaintiff] to stop, to stop, to hold it, and then he either had his gun drawn or he drew his gun and I heard two or three shots fired." Beasley states that he "saw the subject still walking, still walking, running" to "escape or go across the street," and Miller "continued to tell him to stop and get down."  Beasley states that plaintiff "kept on moving, walking so that police officer kicked him, and he stumbled but he still stayed on his feet, then the police officer kicked him again and then he fell down and then the police officer continued to yell at him," but plaintiff "wouldn't listen," so the "police officer gave him one more kick," and then plaintiff got his hand out on the street and other officers arrived.

Beasley's statement can be construed to provide additional evidence to support plaintiff's versions of events, and to refute Miller's version.  Because the Court may not make credibility determinations and cannot engage in any weighing of the evidence,

and, instead, must believe plaintiff's evidence and draw all justifiable inferences in his favor, Beasley's statement demonstrates that an issue of fact remains disputed with regard to the interaction between plaintiff and Miller, and consequently, whether Miller was objectively reasonable in his use of force against plaintiff.

### 3.  *Expert testimony*

Plaintiff has provided an affidavit of W. Ken Katsaris, who plaintiff contends is a qualified expert to render his opinion on the propriety of the use of deadly force.  (Pl. Ex. C.)  Katsaris reports that Miller properly followed the suspects and "would have been justified in giving them commands to stop for the purpose of investigating their potential role in the alleged crimes," but Miller's "confrontation with . . . the suspects reveals Miller rushing up to the suspects closing the distance without leaving a reactionary gap, gun drawn and presented, and creating the possibility of physical contact."  This "dual force creates a danger for both the officer and suspects," and to "close the reactionary gap with gun drawn creates the need to protect the weapon and distinguish between the suspect's attempt to flee or harm the officer."  Katsaris's opinion is that plaintiff "turns to flee past the officer with possible inadvertent contact," and "does not suggest a deliberate confrontation due to the split-second passing of the two."

Katsaris also opines that "the video, physical evidence and witness statements reveal that Miller is standing and presenting his firearm at a <u>fleeing</u> Owens when the shots were fired."

Plaintiff has also submitted an affidavit of Michael M. Baden, M.D., who plaintiff claims to be his forensic expert. (Pl. Ex. D.)  Dr. Baden recounts that the bullet entered plaintiff's left back two inches beneath the shoulder blade, and x-rays show "a fracture of the posterior seventh rib and a downward bullet track that proceeded from back to front and from left to right."  "The track continued through the left upper lobe of the lung and lodged in the right side of the posterior mediastinum at the right cardiophrenic angle."  He notes that the physical evidence reveals that plaintiff's clothing tested negative for residues.  Dr. Baden concludes that Miller's firearm was more than eighteen inches from plaintiff's back when the gun was fired.

Plaintiff contends that this evidence supports his version of events, and demonstrates that the shooting could not have occurred as Miller claims.  Again, the Court may not make credibility determinations and cannot engage in any weighing of the evidence; thus, the Court cannot determine whether these reports are credible.[7]  These reports demonstrate, however, that

---

[7]Miller objects to Katsaris' conclusion that Miller's conduct was not objectively reasonable, and that his conduct

plaintiff has met his burden of providing specific facts showing
that there is a genuine issue for trial--namely, that there is a
dispute as to the importance of the fact that there was no
residue found on plaintiff's shirt.  Consequently, these reports
provide further evidence to warrant the denial of summary
judgment.[8]

Based on the evidence above, plaintiff has demonstrated that
disputed issues of fact exist as to what occurred between
plaintiff and Miller in the loading dock area of the Bally's
casino.  Taking all of plaintiff's evidence as true, and
construing it most favorably in his favor, his contention that
Miller shot him in the back while he was fleeing could be
construed by a jury as excessive force.[9]  Even though Miller

---

violated Atlantic City's and New Jersey's Use of Force Policy,
because these issues are a matter of law for a court, rather than
an expert, to decide.  The Court only considers Katsaris' report
to determine whether plaintiff has presented issues of genuine
material fact to contradict Miller's contention that there are no
disputed issues of fact.  Miller's challenge to Katsaris'
conclusions as an expert should be brought in the form of a
motion in limine prior to trial.

[8]Plaintiff has also presented as a disputed issues of fact
1) Miller's allegedly conflicting statements, 2) plaintiff's
interpretation of Miller's radio transmissions, 3) plaintiff's
argument that Miller should have used less force, like his O.C.
spray or baton, and 4) plaintiff's contention that the track of
the bullet contradicts Miller's version of events.  Although
these issues are disputed, they are plaintiff's interpretations
of certain evidence, and do not serve as "facts" for the summary
judgment analysis.

[9]Miller presents cases which demonstrate that the shooting
of a fleeing suspect in the back is not *per se* unreasonable.

refutes that this evidence supports plaintiff's version of events, and even though Miller presents several arguments for why he was reasonable in his interaction with plaintiff,[10] it is for a jury to decide.  Consequently, summary judgment on plaintiff's Fourth Amendment claim for excessive force must be denied.[11]

### d.   Plaintiff's § 1983 claims against Flipping

Plaintiff has alleged that Robert Flipping, Director of

_____

See, e.g., Tennesee v. Garner, 471 U.S. 1 (1985); Ridgeway v. City of Woolwich Twp., 924 F. Supp. 653 (D.N.J. 1996).  These cases are not relevant for two reasons.  First, Miller denies that he shot plaintiff in the back while he was fleeing.  Second, these cases were decided on the specific facts of each case, and here, where the facts are disputed, the Court cannot weigh the evidence and determine that Miller was reasonable in shooting plaintiff.  Only if the parties agreed as to the circumstances of the shooting could the Court conclude, as a matter of law, whether a reasonable jury would find this shooting was objectively reasonable.

[10]One of Miller's arguments is that he could not have shot plaintiff as he alleges because all four bullet shell casings were found inside the loading dock.  This is an issue of fact for the jury to weigh in consideration of determining whose version of events to believe.

Incidentally, the Court notes that neither party discusses the position of the three bullets that did not strike plaintiff. (See Def. Ex. 29, Forensic Crime Scene Investigation Report.) The relevance of this evidence is for a jury to consider.

[11]Miller contends in his reply brief that a person's right to be free from the use of excessive force while being arrested is not clearly established.  That argument is unavailing.  If it is ultimately found that Miller's actions were not objectively reasonable, Miller would not be entitled to qualified immunity because the Fourth Amendment provides an explicit textual source of constitutional protection for an individual's right to be free from police applications of excessive force.  See Albright v. Oliver, 510 U.S. 266, 281 (1994).

Public Safety for Atlantic City, collectively with all the other defendants, violated his constitutional rights by: failing to properly train and supervise Miller; by failing to correct unconstitutional policies and/or practices; by implicitly and/or expressly teaching, encouraging, and condoning a pattern, practice, a policy of excessive force; by improperly screening, hiring, training, supervising, disciplining, and retaining dangerous police officers; and by improperly investigating, reporting, and attempting to cover-up the unlawful actions of defendants.  (Compl. ¶ 23.)

Flipping is entitled to summary judgment on plaintiff's § 1983 claims for two reasons.  First, if plaintiff is asserting his claim against Flipping in his official capacity, that claim is barred because a claim against a state or local official is actually a claim against the governmental entity.[12]  See Hafer v. Melo, 502 U.S. 21, 25 (1991).

Second, if plaintiff is asserting these claims against Flipping in his individual capacity, plaintiff has not provided any evidence to support these claims.  Flipping has provided an affidavit stating that 1) he had no personal involvement in the shooting of plaintiff, 2) he was not Miller's supervisor, 3) he

_____

[12]Plaintiff has filed § 1983 claims against the governmental entity--the City of Atlantic City.  Those claims are discussed below.

did not give Miller any direction or instructions with regard to his confrontation with plaintiff, 4) he did not hire, train or supervise Miller, and 5) he did not have any involvement in the subsequent investigation of the shooting of plaintiff.  (Def. Ex. 28.)  In his opposition brief, plaintiff does not provide any evidence to refute Flipping's affidavit.  Instead, he makes the conclusory statement that Flipping violated plaintiff's constitutional rights, without indicating which rights were violated, because of Flipping's "actions of improperly screening, hiring, training, supervising, disciplining, and retaining dangerous police officers," "in addition to the implementation and conditioning of policies of unconstitutional excessive force and improperly investigating reporting and attempting to cover-up the unlawful actions of Officer Miller."  (Pl. Opp. at 19.)  Summary judgment must be granted in the moving party's favor where, as here, the party opposing summary judgment simply rests upon mere allegations.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  Consequently, Flipping is entitled to summary judgment on plaintiff's claims arising under § 1983.

### e.   Plaintiff's tort claims against Miller and Flipping

Plaintiff has asserted several state law tort claims against Miller and Flipping.  Against both defendants, plaintiff claims that they are liable for "intentional and/or negligent misuse of

27

a weapon and excessive force" (Count IV) and "negligent screening, supervising, disciplining and retention of dangerous police officers" (Count VI).   Against Miller, plaintiff claims that Miller committed assault and battery against him (Count V).

Defendants argue that these claims are barred because they are immune from suit under the New Jersey Tort Claims Act ("NJTCA").   Although the NJTCA waives the immunity of the state and its employees as long as certain notice provisions are met, the NJTCA still provides absolute immunity to a public employee for "any injury caused by . . . a person resisting arrest or evading arrest."   N.J.S.A. 59:5-2(b).   Additionally, the NJTCA provides that a public employee is entitled to absolute immunity if "he acts in good faith in the execution or enforcement of any law."   N.J.S.A. 59:3-3.   Defendants argue that they are immune from suit because plaintiff's injuries occurred when he was resisting arrest, and because they acted in good faith.

With regard to plaintiff's claims against Flipping, and regardless of the NJTCA immunities, plaintiff's claims against Flipping fail because plaintiff has not provided any evidence to refute Flipping's affidavit that he had no involvement with Miller or the shooting.

With regard to whether plaintiff's claims are barred because of the NJTCA immunities, plaintiff argues that Miller is not entitled to immunity because he engaged in "willful misconduct,"

which abrogates that immunity.  See Tice v. Cramer, 627 A.2d 1090, 1105 (N.J. 1993) (citing N.J.S.A. 59:3-14a ("Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.")).  What constitutes "willful misconduct" is not expressly defined in the statute.  The New Jersey Supreme Court has interpreted "willful misconduct" to require "'much more' than mere negligence," and it "will fall somewhere on the continuum between simple negligence and the intentional infliction of harm."  Alston v. City of Camden, 773 A.2d 693, 702 (N.J. 2001).

Plaintiff's negligence claims against Miller are barred by the NJTCA.  Because plaintiff pleaded guilty to resisting arrest, and his injuries arose out of that resistance, Miller is immune from suit.  Even if plaintiff could prove that Miller was negligent in using his weapon, or liable for the negligent "screening, supervising, disciplining and retention of dangerous police officers,"[13] a finding of negligence would not abrogate that immunity.  Thus, plaintiff's negligence claims in Counts IV and VI fail.

---

[13]Aside from the NJTCA immunity issues, plaintiff has not articulated how Miller would be liable for the negligent "screening, supervising, disciplining and retention of dangerous police officers."

The only remaining state law tort claims against Miller include "intentional misuse of a weapon and excessive force" (Count IV) and assault and battery (Count V).  With regard to Count IV, it is unclear whether a state law tort exists for "intentional misuse of a weapon and excessive force."  Plaintiff does not articulate the elements of such a cause of action, and, other than to restate his constitutional excessive force allegations, plaintiff does not provide evidence on how Miller committed such a tort.  Consequently, Miller is entitled to summary judgment on Count IV.

With regard to his assault and battery claim, to determine whether Miller is immune from suit, it must be determined whether he acted in good faith or committed willful misconduct.  The Court cannot make that determination at this point, however, because the "same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act."  Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1153 (N.J. 2000) (citing Lear v. Township of Piscataway, 566 A.2d 557 (N.J. Super. Ct. App. Div. 1989)).  Thus, because the Court cannot determine as a matter of law whether Miller was objectively reasonable in his use of force against plaintiff, it cannot be determined whether the NJTCA shields Miller from liability for allegedly assaulting plaintiff.  See Mantz v. Chain, 239 F. Supp. 2d 486, 507-08 (D.N.J. 2002)

(denying summary judgment on plaintiff's state law assault and battery claim because it could not be determined whether the officer was entitled to qualified immunity).  Consequently, summary judgment must be denied on plaintiff's assault and battery claim against Miller.

2.   *Defendants City of Atlantic City, the Atlantic City Police Department, and Snellbaker's Motion for Summary Judgment*

Plaintiff has asserted § 1983 claims against the City of Atlantic City, the Atlantic City Police Department, and Police Chief Arthur Snellbaker for excessive force, failure to train, and improper supervision.  He has also asserted state law claims for "intentional and/or negligent misuse of a weapon and excessive force" (Count IV) and "negligent screening, supervising, disciplining and retention of dangerous police officers" (Count VI).  Defendants have moved for summary judgment on all of these claims.  Plaintiff has not opposed their motion.

Even though plaintiff has not opposed defendants' motion, the Court must still determine whether the entry of summary judgment in defendants' favor is appropriate.  Fed. R. Civ. P. 56(e); Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (stating that a moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law, and the court "will accept as true all material

31

facts set forth by the moving party with appropriate record support").  The Court finds that summary judgment in these defendants' favor on all of plaintiff's claims is appropriate.

### a.  Plaintiff's § 1983 claims

As a primary matter, a municipality and its police department are a single entity for the purposes of § 1983 liability.  Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir. 1997).  Similarly, a claim against Chief Snellbaker in his official capacity is actually a claim against the City of Atlantic City.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  Thus, the Atlantic City Police Department and Chief Snellbaker in his official capacity are not proper defendants.

With regard to plaintiff's § 1983 claims against Chief Snellbaker in his individual capacity, whether he is liable for excessive force, failure to train, and improper supervision hinges on the qualified immunity analysis, where it must first be determined whether a constitutional right would have been violated on the facts alleged.  Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004).  Other than plaintiff's conclusory allegations in his complaint, he has not provided any evidence that Chief Snellbaker used excessive force on plaintiff or improperly trained or supervised Miller.  Consequently, summary judgment must be entered in Chief Snellbaker's favor on plaintiff's § 1983 claims.

With regard to plaintiff's § 1983 claims against the City, liability under § 1983 may be imposed on municipalities where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). Monell created a "two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted). The two-path track is described as follows:

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Id. (citation omitted).

To prove a custom claim, a plaintiff must produce evidence either that the policymaker's action violated the plaintiff's rights or that the policymaker failed to act when presented with an obvious need for action, rendering the municipality "deliberately indifferent to the need." Natale, 318 F.3d 575 at 584 (citation omitted). Municipal liability also requires the plaintiff to demonstrate that "'there is a direct causal link

33

between [the] municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  The link between the policy or custom and the injury may not be attenuated or suppositional; the plaintiff must demonstrate that the policymaker's actions "directly caused constitutional harm." Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 175 (3d Cir. 2001) Custom may also be established by evidence of knowledge and acquiescence.  Beck, 89 F.3d 971 (citation omitted).

In cases where the plaintiff alleges that the municipality failed to properly train the employee, the municipality can be liable under § 1983 if the failure to train constitutes "deliberate indifference" to the rights of persons with whom the police come into contact; mere negligence to adequately train is not enough.  Malignaggi v. County of Gloucester, 855 F. Supp 74, 7 7(D.N.J. 1994).  Generally, "where a plaintiff seeks to establish liability based on a supervisor's (or municipality's) failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy." Calhoun v. Vicari, No. 05-4167, 2005 WL 2372870, at *3 (D.N.J. Sept. 26, 2005)(relying on

34

City of Canton v. Harris, 489 U.S. 378, 388-92 (1989)).

In order to bring a claim of failure to train, a plaintiff must: "(1) identify the deficiency; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." Malignaggi, 855 F. at 77 (citing Canton, 489 U.S. at 391; Colburn v. Upper Darby Township, 946 F.2d 1017 (3d Cir. 1991)).

Plaintiff has failed to provide any evidence to support his claims regarding the City's alleged policy and custom of excessive force, or the City's alleged failure to properly train and supervise Miller.  Consequently, summary judgment must be entered in the City's favor on plaintiff's § 1983 claims.

### b.   Plaintiff's state law tort claims

Plaintiff also claims that Atlantic City, its police department, and Chief Snellbaker are liable for "negligent screening, supervising, disciplining and retention of dangerous police officers" (Count VI).  New Jersey recognizes a claim "against police departments for negligent training and supervision of police officers" that "furnish[es] separate and independent grounds for liability against a public entity under principles of vicarious liability." Denis v. City of Newark, 704 A.2d 1003, 1008 (N.J. Super. Ct. App. Div. 1998).  In order to

35

state such a claim, a plaintiff must demonstrate that the public entity negligently retained an "officer knowing of his dangerous propensities and the risk of injury he presented to the public." Id. ("Recognizing that liability may exist against a public entity under the Tort Claims Act for its negligent retention of a police officer who presents a clear public danger not only serves as an expression of societal disapproval of unjustifiable police violence, but also encourages public entities to impose appropriate sanctions in such circumstances.").

Plaintiff has failed to support his claim.  Not only does it appear that plaintiff cannot maintain his claim against Chief Snellbaker, he has failed to provide any evidence to demonstrate that the police department knew of Miller's alleged dangerous propensities.  Thus, summary judgment must be entered in defendant's favor on plaintiff's negligent training and supervision claim.

**III. CONCLUSION**

For the reasons expressed above, summary judgment must be entered in favor of defendants Robert Flipping, the City of Atlantic City, the Atlantic City Police Department, and Chief Arthur Snellbaker on all of plaintiff's claims against them. Summary judgment must also be entered in defendant Charles Miller's favor on plaintiff's claims for "intentional and/or negligent misuse of a weapon and excessive force" (Count IV) and

"negligent screening, supervising, disciplining and retention of dangerous police officers" (Count VI).  Summary judgment must be denied, however, with regard to plaintiff's excessive force claim against Miller brought pursuant to § 1983 and the New Jersey Constitution, as well as plaintiff's state law tort claim against Miller for assault and battery.  An appropriate Order will be entered.


Date: June 6, 2008                    s/ Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.