## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY OWENS,                    :     Civ. Action No. 05-3132 (NLH)
                                  :
          Plaintiff,              :
                                  :
     v.                           :     **OPINION**
                                  :
CITY OF ATLANTIC CITY,            :
ATLANTIC CITY POLICE DEPT.,       :
CHARLES MILLER, ARTHUR C.         :
SNELLBAKER, ROBERT FLIPPING,      :
et al.,                           :
                                  :
          Defendants.             :

**APPEARANCES:**

Thomas F. Shebell, III, Esquire
H. Tiffany Weiner, Esquire
Steven R. Cocchi, Esquire
Shebell & Shebell, LLC
1398 Highway 35 South
Ocean Township, NJ 07712

     *Attorneys for Plaintiff*

A. Michael Barker, Esquire
Sharlenn Pratt, Esquire
Barker, Scott & Gelfand, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

     *Attorney for Defendant Charles Miller*

**HILLMAN**, District Judge

     This matter has come before the Court on the motion for

reconsideration by defendant Charles Miller of the Court's June

6, 2008 Order and Opinion denying his motion for summary judgment

on plaintiff's excessive force and assault and battery claims.

For the reasons expressed below, defendant's motions will be granted in part and denied in part.

I.    **BACKGROUND**

The following facts were included in the Court's prior Opinion, and are helpful to restate here.

This case arises out of the shooting of plaintiff Anthony Owens by defendant Atlantic City Police Officer Charles Miller on July 19, 2003.  On that day, plaintiff and his friend, Clifton Dees, had been gambling and drinking at several casinos on the Atlantic City, New Jersey boardwalk.  At approximately 4:30 p.m., five minutes after plaintiff and Dees had left the Caesars Casino, plaintiff assaulted and attempted to rob a man who was walking on the boardwalk with his friends.  Without getting any money from the man, plaintiff and Dees ran down a ramp and off the boardwalk.

At the same time, Officer Miller, who was dressed in a bike patrol uniform, had been on route to a call regarding a lost child on the boardwalk.  Bystanders to the robbery flagged down Miller and informed him that a man had been assaulted and robbed by two black males, who had fled on foot down the ramp leading to Indiana Avenue.  Miller radioed the station to report the robbery and that he had identified the suspects as two black males, one wearing a white t-shirt and jean shorts (Dees) and the other wearing a white t-shirt and jeans (plaintiff).  Miller bicycled

2

north on Indiana Avenue in the direction of the loading dock and
valet area of Bally's Hotel and Casino.  Miller spotted plaintiff
and Dees running into the loading dock area, approached them from
behind, alighted from his bicycle and drew his gun.  The parties
agree that the plaintiff approaches Miller from the loading dock
area, they converge near the corner of a truck parked in the
loading dock, and that a confrontation occurs.

At this point, the parties' version of events diverge and
diverge dramatically.  Plaintiff claims that Miller shot him in
the back while he was trying to flee after the initial
confrontation.  Miller relates that after he identified himself
as a police officer, plaintiff turned to face Miller and advanced
in his direction.  Miller contends that plaintiff did not heed
Miller's warning to stop, and he brought his gun close to his
body and attempted to kick plaintiff and push him away with his
foot.  Miller then contends that plaintiff grabbed Miller's leg,
threw him onto the ground, and attempted to grab his gun.  While
plaintiff was trying to take Miller's gun, Miller claims that he
fired four shots in rapid succession, with one bullet hitting
plaintiff in the back.  Miller relates that plaintiff then
attempted to run away, but a short distance later fell, got up
again, and then got down onto the ground in a prone position.
Miller claims that he got to his feet, radioed dispatch that
shots had been fired and that plaintiff had attempted to take his

3

gun.  Miller continued to point his gun at plaintiff until additional police units arrived.

A Bally's security camera captured the incident in the loading dock, and both parties agree that this incident lasted less than three seconds.  Plaintiff claims that as a result of being shot in the back, he suffered "severe, permanent physical injuries, including but not limited to, the following: fractures of the posterior sixth and seventh ribs; a fracture[] of the sixth thoracic vertebrae; bilateral punctured lungs; significant lung damage, resulting in the need for a left-sided lobectomy; permanent diminished lung capacity . . . ."  (Compl. ¶ 17.)

Plaintiff was indicted for robbery, conspiracy to commit robbery, and aggravated assault on a police officer.  He pleaded guilty to robbery in violation of N.J.S.A. 2C:15-1 and resisting arrest by physical force or violence in violation of N.J.S.A. 2C:29-2(a)(3)(a).  Plaintiff was sentenced to seven years for robbery and four years for resisting arrest, with the sentences to run concurrently.  The shooting was investigated by the Atlantic County Prosecutor's Office and presented to the grand jury, who determined that the shooting of Owens was justified.  The prosecutor's office also cleared Miller of any wrongdoing.

## II.  DISCUSSION

In the Court's June 6, 2008 Opinion and Order, the Court granted summary judgment in favor of all defendants on all of

plaintiff's claims, except for plaintiff's claims against Officer
Miller for excessive force in violation of plaintiff's state and
federal constitutional rights and assault and battery under state
law.  Miller is seeking reconsideration of the Court's decision
on these claims.[1]  Specifically, Miller asks the Court to
reconsider its decision that plaintiff's excessive force claim is
not barred under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994),[2] and that
there are issues of disputed fact with regard to whether Miller
is entitled to qualified immunity.  Plaintiff has opposed
Miller's motion.

### A.   Standard for Motion for Reconsideration

Local Civil Rule 7.1(i) governs a motion for
reconsideration.  It provides, in relevant part, that "[a] motion
for reconsideration shall be served and filed within 10 business
days after the entry of the order or judgment on the original
motion by the Judge or Magistrate Judge.  A brief setting forth

---

[1]In the June 6, 2008 Opinion, the Court denied Miller's
motion for summary judgment on plaintiff's assault and battery
claim.  We reasoned that since the Court could not determine as a
matter of law whether Miller was objectively reasonable in his
use of force against plaintiff, we were similarly precluded from
determining whether the NJTCA shielded Miller from liability for
allegedly assaulting plaintiff.  (Op. at 30.)  Because the
resolution of Miller's motion for reconsideration does not
determine whether Miller was objectively reasonable in his use of
force, the issue of Miller's liability for plaintiff's assault
and battery claim remains open.

[2]Miller is not seeking reconsideration of the Court's
finding that plaintiff's excessive force claim is not barred
because of his robbery conviction.

concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion."  A judgment may be altered or amended only if the party seeking reconsideration shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence."  Id.  The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached. P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001). Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999), and should be dealt with through the normal appellate process, S.C. ex rel. C.C. v. Deptford Twp Bd. of Educ., 248 F. Supp. 2d 368, 381 (D.N.J. 2003).

6

B.    **Analysis**

1.    **Whether <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) bars plaintiff's excessive force claim**

Under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), if a favorable judgment on a § 1983 damages claim would "necessarily imply the invalidity" of the plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  <u>Heck</u>, 512 U.S. at 486-87.  In determining that <u>Heck</u> did not bar plaintiff's excessive force claim by virtue of plaintiff pleading guilty to resisting arrest by physical force or violence, N.J.S.A. 2C:29-2(a)(3)(a), Miller argues that the Court did not properly consider that self-defense is a defense to that crime, and because plaintiff did not argue self-defense, a finding in favor of plaintiff on his excessive force claim would be inconsistent with his guilty plea.  To support his argument, Miller contends that (1) the Court's reliance on a Third Circuit case, <u>Nelson v. Jashurek</u>, 109 F.3d 142 (3d Cir. 1997), which analyzed Pennsylvania law, and not New Jersey law, was in error, (2) the Court should follow its decision in another case addressing the <u>Heck</u> doctrine, <u>Garrison v. Porch</u>, Civ. Action No. 04-1124 (NLH) (March 9, 2007), (3) and the Court should follow an opinion by another district judge in this district that also addressed the <u>Heck</u> doctrine, <u>Feeney v. Powell</u>, Civ. A. No. 06-1849 (RBK) (June

7

17, 2008).  All three of Miller's arguments are unavailing.

First, with regard to Miller's first argument, the Court did acknowledge that Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997) considered Pennsylvania law.  The Court recognized, however, that the analysis of the Pennsylvania law in Nelson was applicable to the analysis of the New Jersey law to which plaintiff pleaded guilty.  In the Opinion, this Court explained:

> [I]n Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997), the plaintiff was convicted in state court of resisting arrest in violation of a Pennsylvania statute, "which provides that a person is guilty of resisting arrest if 'with the intent of preventing a public servant from effecting a lawful arrest [he] creates a substantial risk of bodily injury to the public servant . . . or employs means justifying or requiring *substantial force* to overcome the resistance.'"  Nelson, 109 F.3d at 145 (emphasis in original).  Following his conviction, the plaintiff filed suit pursuant to § 1983 against the arresting officer, claiming that the officer used excessive force in effecting his arrest.  Id. at 144. The district court dismissed the plaintiff's excessive force claim, finding that Heck barred his claim because a judgment in his favor would invalidate his conviction for resisting arrest.  Id. at 144-45.  On appeal, the Third Circuit reversed, holding that a finding that the officer used excessive "substantial force" would not imply that the arrest was unlawful.  Id. at 145.  The court explained,

> > Our difficulty with the district court's result is that the fact that [the officer] was justified in using 'substantial force' to arrest [the plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable.  In short, there undoubtedly could be 'substantial force' which is objectively reasonable and

8

> 'substantial force' which is excessive and
> unreasonable.

Id.  (June 6, 2008 Op. at 13-14.)

In the Court's June 6, 2008 Opinion, this Court then applied
that analysis to the case here, explaining:

> The same analysis applies here.  Plaintiff pleaded
> guilty to N.J.S.A. 2C:29-2(a)(3)(a), which provides
> that a person is guilty of resisting arrest if he
> "purposely prevents or attempts to prevent a law
> enforcement officer from effecting an arrest" by using
> or threatening "to use physical force or violence
> against the law enforcement officer or another."  By
> his guilty plea, plaintiff has admitted that he used
> physical force or violence against Miller to
> purposefully prevent his arrest.  Even with that
> admission, however, it could still be found that Miller
> used even more force--i.e., excessive and unreasonable
> force--in effecting plaintiff's arrest than plaintiff
> used in resisting arrest.  Thus, plaintiff's excessive
> force claim is not barred by Heck.

(June 6, 2008 Op. at 14-15.)

Miller may disagree with the Court's interpretation of
Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997) and its
application to this case, but that disagreement is insufficient
to warrant reconsideration of the Court's decision.  See United
States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J.
1999).[3]

---

[3]The Court notes that the extensive arguments Miller makes
in his reconsideration brief in distinguishing Nelson and
explaining the difference between New Jersey and Pennsylvania law
with regard to the defense of self-defense to the crime of
resisting arrest were not presented in Miller's original summary

Next, with regard to Miller asking the Court to apply its decision in <u>Garrison v. Porch</u>, Civ. Action No. 04-1124 (NLH) (March 9, 2007) to this case, Miller fails to recognize the distinction this Court made with regard to <u>Garrison</u>.  In a footnote, the Court stated,

> Courts, including this Court, have found that a plaintiff who has pleaded guilty to assaulting an officer and who has not availed himself of the defense of self-defense cannot sustain an excessive force claim.  Allowing such a plaintiff to maintain an excessive force claim would undermine the assault conviction because it would demonstrate that the force applied to the suspect was not excessive and unnecessary.  <u>See</u> <u>Garrison v. Porch</u>, Civ. Action No. 04-1124 (NLH) (March 9, 2007); <u>Jennings v. Fetterman</u>, 197 Fed. Appx. 162, 163 (3d Cir. 2006).  It appears that Miller is relying on that holding to support his argument.  As stated above, Miller's argument is misplaced, because plaintiff was not convicted of assaulting him.

(June 6, 2008 Op. at 13 n.4.)

As stated in the Court's prior Opinion, the plaintiff in <u>Garrison</u> pleaded guilty to assaulting the officer defendant, and not just to resisting arrest by physical force or violence as plaintiff here.  That distinction is one of the primary reasons why <u>Heck</u> barred the plaintiff's claim in <u>Garrison</u> but it does not bar this plaintiff's claim.  Miller may not agree with the distinction, but, again, such disagreement is not a basis for a

---

judgment motion papers.  Rather, Miller focused on self-defense with regard to robbery, which the Court addressed in the prior Opinion, and on which Miller is not seeking reconsideration.

motion for reconsideration.

Finally, Miller's argument that the Court should consider Feeney v. Powell, Civ. A. No. 06-1849 (RBK) (June 17, 2008) is also unavailing.  A court's failure to consider another district court's decision on a similar issue is not a sufficient basis for reconsideration, as the other court's opinion is not a "controlling decision."  See Local Civ. R. 7.1(i).  This is especially true when, as here, that opinion was issued after the decision concerning which a defendant is asking for reconsideration--that is, a court cannot have "overlooked" an opinion that had not yet been filed.[4]

Furthermore, even if the Court were to consider Feeney, it is distinguishable because the plaintiff in that case pleaded guilty to two counts of aggravated assault on the officer defendant, as well as to resisting arrest.  Thus, Feeney is distinguishable for the same reasons as this Court's decision in Garrison.

Additionally, to the extent that Feeney can be read to hold that Heck bars - under any and all circumstances - plaintiff's

---

[4]The Court notes that the Feeney opinion does not discuss the June 6, 2008 opinion in this case or the March 9, 2007 opinion in Garrison.  The Court also notes that the defendants in Feeney are represented by the same counsel in this case and in Garrison, and that although the defendants in Feeney extensively cite to the Garrison opinion in their moving brief, the Feeney court, while following the same analysis of Garrison, does not cite to Garrison.

excessive force claim simply because plaintiff pled guilty to resisting arrest by physical force or violence, this Court disagrees with that holding.  First, we find such reasoning inconsistent with Nelson, a post-Heck decision binding on us. While we recognize that Feeney distinguishes the Third Circuit case by simply stating, "Given New Jersey's definition of the offense, Heck applies here, not Nelson[,]", this Court is inclined to follow its own reasoning, discussed above and in the original opinion, of why the analysis of Nelson is applicable, rather than distinguishable.

Simply put, and as we explain below, we do not think the Heck issue turns solely on a analysis of the elements of the underlying crime where the circumstances of the underlying crime do not provide the factual basis for the claim of excessive force.  In this case, plaintiff does not allege that the use of excessive force occurred contemporaneously with the act of resisting arrest.  In cases of that kind, the elements of the crime become relevant in determining whether the allegations in the excessive force are inconsistent with the underlying conviction.

But conversely, that analysis is not directly relevant to the issue of whether the officer defendant later used excessive force after the conduct constituting resisting arrest.   To put it in a factual context, the facts in the Nelson case suggest

12

while the plaintiff had run from an officer trying to effect an arrest, he later "sat down" and was assaulted with the use of flashlight after he "later got up from the chair."  The plaintiff did not appear to contest the conduct that led to his resisting arrest conviction but instead claimed that the force used to effect the lawful arrest was "excessive", a claim the court held was not barred by <u>Heck</u>.  Similarly, here plaintiff claims that it is the act of later shooting him in the back as he flees - not the force used to counteract his acts of resistance when he first encounters the officer at the corner of the truck parked in the loading dock - that constitutes excessive force.  In our view, <u>Nelson</u> preserves these kinds of claims.

　　　We recognize that <u>Feeney</u> supports its holding based on an example directly from the <u>Heck</u> opinion.  In <u>Heck</u>, the Supreme Court provided an example of when a § 1983 claim would be barred:

> An example of this latter category-a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense.) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, the § 1983 action will not lie.

(Feeney Op. at 10 (citing Heck v. Humphrey, 512 U.S. 477, 487 n.6 (internal citations omitted)).  Based on this example, the court in Feeney found, "New Jersey's definition of resisting arrest is nearly identical to that cited in Heck; therefore, Feeney's Fourth Amendment claim is also precluded by his conviction for resisting arrest."  (Id.)

Of course, we too are bound by Heck.  We accept the notion Heck serves to bar a plaintiff's § 1983 claim of unreasonable seizure in a general sense.  But Heck simply does not address whether a plaintiff's § 1983 claim of excessive force would similarly be barred.  The Supreme Court's example does not make a distinction between being unreasonably seized in the course of an arrest where an officer must overcome forceful resistance on the one hand and being unreasonably seized by later being kicked, punched, or shot.  In the former case a § 1983 claim may be barred by a resisting arrest conviction because a claimant cannot maintain that he should not have been seized while at the same time admitting that he improperly resisted a lawful arrest.  A § 1983 claim based on an arrest where excessive force is used, especially after the fact, does not implicate the same paradox. Thus, this Court is not persuaded to change its decision based on the Feeney case or the example in Heck.

This Court is mindful that the case law in this Circuit, and through out the country, regarding the application of Heck to

14

excessive force claims appears to be conflicting and does not provide any bright line rules.  In this case and in <u>Garrison</u>, this Court has made the distinction that <u>Heck</u> may serve to bar a plaintiff's excessive force claim if he has pleaded guilty to assaulting an officer, but a plaintiff's excessive force claim is not necessarily barred if he has pleaded guilty to resisting arrest.  This distinction is important because extending <u>Heck</u> to bar the excessive force claims of all plaintiffs who have pleaded guilty to resisting arrest could effectively eliminate excessive force claims against police officers.  That is because, in practical terms, most arrests that inspire excessive force claims contain some element of resistence on the part of the arrestee. Thus, a plaintiff, such as the plaintiff here, who has admitted to resisting arrest by pushing an officer out of the way and then fleeing, would have no civil remedy if the plaintiff claimed that the officer was unreasonable in shooting him in the back while he was fleeing.

Even though such a claim may not ultimately prove to be viable based on the facts of the situation as eventually found by the fact finder, the plaintiff should be permitted to bring such a claim when there are material factual disputes.  The claim should not be barred outright by a bright line rule that any guilty plea to resisting arrest automatically bars an excessive force claim in all circumstances.  In our view, <u>Heck</u> does not

preclude this analysis and <u>Nelson</u> compels it.

Accordingly, for all the reasons expressed above, Miller's motion for reconsideration of the Court's decision that <u>Heck</u> does not bar plaintiff's excessive force claim must be denied.

**2.    Whether the Court should reconsider its decision on the issue of qualified immunity**

In the Court's June 6, 2008 Opinion, the Court determined that summary judgment could not be entered in favor of Miller because issues of disputed fact existed as to whether Miller is entitled to qualified immunity.  The determination of qualified immunity is a two-step process--first, it must be determined whether a constitutional right would have been violated on the facts alleged, and second, if a constitutional violation did occur, it must be determined whether the right was clearly established.  <u>Doe v. Groody</u>, 361 F.3d 232, 238 (3d Cir. 2004) (citations omitted).  This Court found that with regard to the first step, an issue of fact remained disputed with regard to the interaction between plaintiff and Miller, and consequently, whether Miller was objectively reasonable in his use of force against plaintiff.  Because the first part of the inquiry could not be decided, the Court did not consider the second step, other than to note in a footnote, "If it is ultimately found that Miller's actions were not objectively reasonable, Miller would not be entitled to qualified immunity because the Fourth Amendment provides an explicit textual source of constitutional

16

protection for an individual's right to be free from police applications of excessive force." (June 6, 2008 Opinion at 25 n.11 (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 281 (1994)).

In his motion for reconsideration, Miller argues that the Court should have analyzed the second element of the qualified immunity analysis and determine that plaintiff's right to be free from excessive force was not clearly established under these circumstances.  Miller argues that even taking as true all of plaintiff's allegations--that plaintiff was shot in the back as he fled--it was not clearly established to put the objectively reasonable police officer in Miller's position on notice that his conduct was unlawful.

The Court recognizes that, despite its footnote, a finding of excessive force does not automatically end the qualified immunity analysis.  It must be considered whether plaintiff's rights in this specific context were "clearly established," and to conclude that a right is "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Green v. New Jersey State Police</u>, 246 Fed. Appx. 158, 162-63 (3d Cir. 2007) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his

17

conduct was unlawful in the situation he confronted."
Id. (citation omitted).[5]  Officers who make reasonable mistakes
as to what the law requires are entitled to qualified immunity,
which "operates . . . to protect officers from the sometimes hazy
border between excessive force and acceptable force."  Id.
(citation omitted).

Deciding the second step of the qualified immunity analysis
when there are disputed facts with regard to the first step, in
practical effect, requires the Court to go ahead and consider the
first step anyway.  The Third Circuit recognized this "degree of
duplication inherent" in the two-part scheme, noting that "the
question whether the amount of force an officer used was
unreasonable and violated the Fourth Amendment may be viewed as
blending somewhat into the question whether the officer
reasonably believed that the amount of force he used was lawful."
Bennett v. Murphy, 120 Fed. Appx. 914, 917 (3d Cir. 2005); see
also Curley v. Klem, 499 F.3d 199, 214 (3d Cir. 2007) ("Confusion
between the threshold constitutional inquiry and the immunity
inquiry is also understandable given the difficulty courts have

_____

[5]The Third Circuit "has adopted a broad view of what
constitutes an established right of which a reasonable person
would have known," and "has held that there does not have to be
'precise factual correspondence' between the case at issue and a
previous case in order for a right to be 'clearly established,'
and we would not be 'faithful to the purposes of immunity by
permitting . . . officials one liability-free violation of a
constitutional or statutory requirement.'"  Kopec v. Tate, 361
F.3d 772, 777-78 (3d Cir. 2004) (citations omitted).

had in elucidating the difference between those two analytical steps.").

Here, if it is found that Miller committed excessive force against plaintiff, it seems disingenuous for Miller to then say he did not know that *that* particular use of excessive force was wrong--there is no list of types of excessive force that have been held to be "clearly established," so that all other types of excessive force are not "clearly established."  Further, because the Fourth Amendment provides an explicit textual source of constitutional protection for an individual's right to be free from police applications of excessive force, it would make sense that an officer cannot be shielded from liability for any form of excessive force.  The Supreme Court, however, requires that "the two inquiries are distinct: Even where an officer's actions are unreasonable . . . , that officer is still entitled to immunity if he or she has a reasonable 'mistaken understanding as to whether a particular amount of force is legal' in a given factual situation." Id. (citing Saucier v. Katz, 533 U.S. 194, 213 (2001)).  Thus, assuming that Miller used excessive against plaintiff (step one), it must be determined whether Miller was reasonable in his mistaken belief that he was permitted to use such force (step two).  In other words, it must be determined whether it was reasonable for Miller to think that shooting at plaintiff four times while he was fleeing was not excessive

19

force.

> As a general proposition,
>
> The use of deadly force to prevent the escape of all
> felony suspects, whatever the circumstances, is
> constitutionally unreasonable.  It is not better that
> all felony suspects die than that they escape.  Where
> the suspect poses no immediate threat to the officer
> and no threat to others, the harm resulting from
> failing to apprehend him does not justify the use of
> deadly force to do so.  It is no doubt unfortunate when
> a suspect who is in sight escapes, but the fact that
> the police arrive a little late or are a little slower
> afoot does not always justify killing the suspect.

Tennessee v. Garner, 471 U.S. 1, 11 (1985); see also Bennett, 120

Fed. Appx. at 918 (stating that "under Graham and Garner '[l]aw

enforcement officers may not kill suspects who do not pose an

immediate threat to their safety or to the safety of others

simply because they are armed'").  However, the use of deadly

force has been found to be proper under certain circumstances:

> In deciding whether challenged conduct constitutes
> excessive force, a court must determine the objective
> "reasonableness" of the challenged conduct, considering
> [1] the severity of the crime at issue, [2] whether the
> suspect poses an immediate threat to the safety of the
> officer or others, [3] and whether he is actively
> resisting arrest or attempting to evade arrest by
> flight.  Other factors include [4] the duration of the
> [officer's] action, [5] whether the action takes place
> in the context of effecting an arrest, [6] the
> possibility that the suspect may be armed, and [7] the
> number of persons with whom the police officers must
> contend at one time.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (internal

citations and quotations omitted).  The Third Circuit has noted

that these factors are "well-recognized," and that when an

officer applies them in "an unreasonable manner, he is not entitled to qualified immunity."  Green v. New Jersey State Police, 246 Fed. Appx. 158, 162-63 (3d Cir. 2007).

Here, Miller denies that he shot plaintiff in the back while he was fleeing, and instead Miller maintains that after he identified himself as a police officer, plaintiff turned to face Miller and advanced in his direction.  Miller contends that plaintiff did not heed Miller's warning to stop, and he brought his gun close to his body and attempted to kick plaintiff and push him away with his foot.  Miller then contends that plaintiff grabbed Miller's leg, threw him onto the ground, and attempted to grab his gun.  While plaintiff was trying to take Miller's gun, Miller claims that he fired four shots in rapid succession, with one bullet hitting plaintiff in the back.  Miller relates that plaintiff then attempted to run away, but a short distance later fell, got up again, and then got down onto the ground in a prone position.

As noted above, it is difficult to evaluate Miller's subjective beliefs as to the legality of him shooting plaintiff when he does not believe he shot a fleeing man.  If a jury were to believe Miller's version of events, Miller might not be found to have committed excessive force, and no step-two analysis would have to be conducted.  Or, even if a jury were to determine his version of events constituted excessive force, the step-two

21

analysis would be much different under Miller's version than under plaintiff's version.  Thus, the Court feels constrained to analyze whether it was reasonable for Miller to think that shooting at plaintiff four times while he was fleeing was not excessive force, because there is a disputed fact as to whether Miller shot plaintiff as he was fleeing or while he was grappling with Miller.

The Third Circuit has recognized this conundrum and has provided guidance on how to solve it.  Even though the determination of whether an officer made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge could decide the objective reasonableness issue once all the historical facts are no longer in dispute.  Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007).  To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity."  Id. In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court."

22

Id.; see also id. at 225-26 (dissenting opinion) (internal
citations omitted) ("[I]f factual disputes relevant to [the step-
two] legal analysis do exist, the court will have to postpone
making this determination until the jury resolves all the
relevant factual disputes, because determining what actually
happened is a prerequisite to determining whether the law clearly
established that a particular action was permitted or prohibited
by the Fourth Amendment under those circumstances.  After the
jury resolves these relevant fact disputes, presumably through
the use of special interrogatories, the court is then capable of
deciding whether or not the law clearly permitted or prohibited
the conduct constituting the constitutional violation.").

This Court must follow this path.  Before it is determined
whether the law clearly establishes the legality of Miller's
conduct, the jury must first decide what Miller's conduct
actually was.  Consequently, Miller's motion for reconsideration
of the Court's qualified immunity analysis will be granted to the
extent that the Court modifies its prior Opinion to hold that the
decision on whether Miller is entitled to qualified immunity will
be held in abeyance pending the jury's resolution of the disputed
facts.

**III. CONCLUSION**

Miller's motion for reconsideration will be denied as to
whether the Heck doctrine bars plaintiff's claims, but it will be

23

granted, as explained above, with regard to the qualified immunity issue.  An appropriate Order will be entered.


Date:  September 8, 2008              s/Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

24